UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

**Chetan Singh Rakieten**

**Plaintiff,**

**V.**                                                      **Civil Action No.**

**WHDH-TV, INC.,**

**Defendant.**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Chetan Singh Rakieten, by and through his attorney, Rosa Lee Klaneski, Esq., for his Complaint against WHDH, alleges, on knowledge as to his own actions, and otherwise upon information and belief, as follows:

**PARTIES**

1. Plaintiff Chetan Singh Rakieten ("Plaintiff") is an individual who resides at 501 Buckminster Drive, Apt. #201, Norwood, Norfolk County, Massachusetts 02062.

1

2. Upon information and belief, WHDH ("Defendant") is a business organization with its principal place of business at 7 Bulfinch Place, Boston, Suffolk County, Massachusetts 02114.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under 42 U.S.C. § 2000e-2(a)(1), 42 U.S.C. § 2000e-3(a), 29 U.S.C. § 2615(a)(1), 29 U.S.C. § 2615(a)(2), 42 U.S.C. § 1981, and 42 U.S.C. § 1981a.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. The Defendant WHDH maintains its principal place of business at 7 Bulfinch Place, Boston, Massachusetts, which is located in Suffolk County, and the alleged discriminatory acts occurred in this district.

## STATEMENT OF FACTS

5. On or about February 27, 2026, Plaintiff sent an email to Defendant's Human Resources Director, Dawn Eggleston, objecting to a new work schedule of Thursday to Monday from 3 p.m. to 11 p.m. and requesting a reasonable accommodation due to his responsibilities as the primary caregiver for his father, who has Parkinson's disease, and his mother, who has a heart condition.

6. Plaintiff explained in the February 27, 2026 email that the new schedule would significantly impact his ability to care for his parents, both of whom have serious medical conditions.

2

7. Plaintiff stated in the same email that he was concerned about discrimination by association with family members who have disabilities.

8. Plaintiff proposed alternative schedules, including 10 a.m. to 6 p.m. Monday through Friday, Sunday through Thursday 3 p.m. to 11 p.m., and 3:30 p.m. to 11:30 p.m., which he believed would better accommodate his caregiving responsibilities while meeting Defendant's business needs.

9. Plaintiff copied union representatives and other Defendant personnel on his February 27, 2026 email, including S. Katsos and Fletcher Fischer of IBEW 1228, Steven Dirksmeier, Rich Bourque, Alec Elbert, Stephen Spence, and Mike Williams.

10. On or about March 3, 2026, Dawn Eggleston responded to Plaintiff's request by stating that she does not handle schedules and referred Plaintiff to speak with his manager.

11. Plaintiff continued to complain to management and Human Resources about the new schedule from February 2026 onward, stating that the schedule prevented him from caring for his parents and being available for emergencies.

12. Plaintiff's union advocated for a schedule change on his behalf, but Defendant refused to adjust or accommodate Plaintiff's schedule.

13. The new Thursday to Monday 3 p.m. to 11 p.m. schedule took effect in or about May 2026.

14. Plaintiff's parents reside in Syracuse, New York, approximately five hours away from Plaintiff's residence.

3

15. Plaintiff repeatedly informed Defendant that the new schedule would not work due to his caregiving responsibilities, but Defendant did not make any changes.

16. Plaintiff identifies as Sikh and wears a turban as an outward indication of his personal identity and belief system.

17. Plaintiff alleges that other similarly-situated employees received better schedules than he did.

18. Plaintiff states that another employee with a newborn baby requested a different schedule due to daycare needs, but Defendant refused to accommodate that employee, resulting in the employee leaving.

19. On or about June 8, 2026, Plaintiff forwarded emails regarding his scheduling concerns and discrimination to his attorney in preparation for a meeting.

20. Since approximately February 2026, Plaintiff has been engaged in ongoing disputes with Defendant's management regarding his work schedule.

21. Plaintiff states that management ignored his requests to retain his prior schedule or to provide a workable new schedule that would allow him to care for his parents.

22. Plaintiff threatened to file a lawsuit against Defendant in order to exert reasonable pressure on it in order to take care of family members, but management ignored his comments.

23. Plaintiff reports that the terms of his employment are causing him to feel as if the employment relationship has broken down.

24. Plaintiff alleges that he has been bullied by management multiple times.

4

25. Plaintiff describes an incident at a press conference for the previous Attorney General, where his camera failed to record audio, and management, including Jon Hall, immediately blamed him for not monitoring the audio.

26. Plaintiff asserts that he did monitor the audio and that engineering and other photographers determined the failure was due to an internal camera problem.

27. Management issued a write-up placing full blame on Plaintiff for the camera failure, but later rescinded the write-up after engineering proved it was not Plaintiff's fault.

28. Plaintiff reports that management has blamed him for other equipment failures.

29. When Plaintiff started working for Defendant, in response to his identity his supervisor Steve Spence trained him and addressed him by his last name, "Rakieten," which made Plaintiff uncomfortable and felt as though he was being talked down to.

30. On or about June 16, 2026, Plaintiff was on vacation visiting his parents when both parents suffered falls.

31. Plaintiff texted his supervisor, Steve, to request Monday off because his regular days off were Tuesday and Wednesday, and his last vacation day was Sunday.

32. Plaintiff explained to his supervisor that he needed more time to ensure his parents were okay and requested to return to work on Thursday instead of Monday.

33. Plaintiff offered to use a holiday from September to cover the Monday absence.

34. Plaintiff provided his contact information and indicated his parents were resting after their falls.

35. Plaintiff's supervisor instructed him to call an individual named Alison regarding his request for time off.

36. On or about June 18, 2026, Plaintiff forwarded the email chain regarding his holiday and vacation request to his attorney after the request went unanswered.

37. On or about June 27, 2026, Plaintiff submitted an EEOC inquiry alleging discrimination and retaliation related to scheduling and his need to care for his elderly parents.

38. Plaintiff reported in the EEOC inquiry that he complained to management and HR about the assigned Thursday to Monday 3 p.m. to 11 p.m. schedule since February 2026, but management refused to adjust or accommodate his schedule.

39. Plaintiff stated in the EEOC inquiry that the schedule prevented him from responding to parental emergencies and caused hardship.

40. Plaintiff reported that his union advocated for a schedule change without success.

41. Plaintiff identified another employee with a new baby who sought a different schedule due to daycare, but management refused and the employee left, and felt that treatment around his identity was leading to a similar breakdown.

42. On or about July 2, 2026, Plaintiff filed a formal charge of discrimination with the EEOC, alleging discrimination based on race, color, religion, sex, national origin, age, pregnancy, disability, genetic information, retaliation, and scheduling.

6

43. Plaintiff stated in the EEOC charge that he filed complaints multiple times due to his elderly parents' worsening health, specifically his father's Parkinson's disease and his mother's heart failure.

44. Plaintiff alleged in the EEOC charge that Defendant gave him a schedule that did not allow him to care for his elderly parents and that Defendant refused to listen to his complaints, though it was able for it to accommodate him.

45. Plaintiff stated that Defendant also refused to help other employees with newborn childcare needs affected by scheduling, reflecting an overall work culture where identity characteristics and the needs of family members are routinely not respected and is violative of fairness norms..

46. EEOC released the Plaintiff's claim around attributing such animus to his Sikh status which the Plaintiff now brings forward for redress in this court.

### CAUSES OF ACTION

### COUNT ONE (Against Defendant WHDH) – Violation of 42 U.S.C. § 2000e-2(a)(1) (Unlawful Employment Practices)

47. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

48. Defendant is an employer subject to Title VII, and Plaintiff is an employee within the meaning of the statute. Plaintiff is a member of protected classes, including race, religion, and national origin, and has suffered adverse employment actions, including the imposition of a work schedule that prevented him from caring for his elderly parents with serious health conditions, despite repeated requests for

accommodation. Defendant treated other employees outside Plaintiff's protected classes more favorably with respect to scheduling. These actions constitute unlawful discrimination in violation of 42 U.S.C. § 2000e-2(a)(1).

49. By reason of the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

**COUNT TWO (Against Defendant WHDH) – Violation of 42 U.S.C. § 2000e-3(a)**

**(Retaliation)**

50. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

51. Plaintiff engaged in protected activity by complaining to Defendant's management and human resources about discrimination and requesting reasonable accommodation for his caregiving responsibilities. Defendant retaliated against Plaintiff by refusing to adjust his schedule and by subjecting him to adverse actions after his complaints, in violation of 42 U.S.C. § 2000e-3(a).

52. By reason of the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

**COUNT THREE (Against Defendant WHDH) – Violation of 29 U.S.C. § 2615(a)(1)**

**(FMLA Interference)**

53. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

8

54. Plaintiff was eligible for leave under the Family and Medical Leave Act (FMLA) due to his parents' serious health conditions. Defendant interfered with, restrained, or denied Plaintiff's exercise of FMLA rights by refusing to accommodate his requests for leave or schedule adjustments to care for his parents, in violation of 29 U.S.C. § 2615(a)(1).

55. By reason of the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## COUNT FOUR (Against Defendant WHDH) – Violation of 29 U.S.C. § 2615(a)(2) (FMLA Retaliation)

56. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

57. Plaintiff engaged in protected activity under the FMLA by requesting leave or schedule adjustments to care for his parents. Defendant retaliated against Plaintiff for exercising his FMLA rights by refusing to accommodate his requests and by subjecting him to adverse employment actions, in violation of 29 U.S.C. § 2615(a)(2).

58. By reason of the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## COUNT FIVE (Against Defendant WHDH) – Violation of 42 U.S.C. § 1981 (Equal Rights Under the Law)

59. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

9

60. Plaintiff is a member of a racial and religious minority and was subjected to disparate treatment in the terms and conditions of his employment, including scheduling and discipline, on account of his race, religion, and national origin. Defendant's conduct deprived Plaintiff of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of 42 U.S.C. § 1981.

61. By reason of the foregoing, Defendant is liable to Plaintiff in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

**COUNT SIX (Against Defendant WHDH) – Violation of 42 U.S.C. § 1981a (Damages in Cases of Intentional Discrimination in Employment)**

62. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 46 above as if fully set forth herein.

63. Defendant's conduct as described above constitutes intentional discrimination against Plaintiff on the basis of race, color, religion, or national origin, entitling Plaintiff to compensatory and punitive damages under 42 U.S.C. § 1981a.

64. By reason of the foregoing, Defendant is liable to Plaintiff for compensatory and punitive damages in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chetan Singh Rakieten respectfully requests that this Court:

1. Declare that Defendant WHDH violated Plaintiff Chetan Singh Rakieten's rights under 42 U.S.C. § 2000e-2(a)(1), 42 U.S.C. § 2000e-3(a), 29 U.S.C. § 2615(a)(1), 29 U.S.C. § 2615(a)(2), 42 U.S.C. § 1981, and 42 U.S.C. § 1981a by engaging in unlawful discrimination, retaliation, and interference with Plaintiff's rights as alleged herein.

2. Enjoin Defendant WHDH from engaging in further unlawful employment practices against Plaintiff Chetan Singh Rakieten in violation of Title VII, the Family and Medical Leave Act, and 42 U.S.C. § 1981.

3. Award Plaintiff Chetan Singh Rakieten all make-whole relief to which he is entitled, including but not limited to back pay, front pay or reinstatement, lost benefits, and other economic damages in an amount to be determined at trial.

4. Award Plaintiff Chetan Singh Rakieten compensatory damages for emotional distress, pain and suffering, and other non-economic losses in an amount to be determined at trial, as permitted by 42 U.S.C. § 1981a and other applicable law.

5. Award Plaintiff Chetan Singh Rakieten punitive damages against Defendant WHDH for its intentional discrimination, as permitted by 42 U.S.C. § 1981a.

6. Award Plaintiff Chetan Singh Rakieten his reasonable attorneys' fees, expert witness fees, and costs of suit, as permitted by 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 2617(a)(3), and 42 U.S.C. § 1988.

7. Award Plaintiff Chetan Singh Rakieten prejudgment and post-judgment interest as allowed by law.

8. Grant such other and further relief as the Court deems just and proper.

Dated: August 5, 2026.

Respectfully submitted,

Plaintiff, Chetan Rakieten
By his counsel,

/s/ Rosa Lee Klaneski

Rosa Lee Klaneski, Esq.
1380 Main Street, Suite 410
Springfield, MA 01103
413-200-7399
rk@klaneskilaw.com